IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LOUDERMILK SERVICES, INC., et al.,

        Plaintiffs,

v.                                                           CIVIL ACTION NO. 3:04-0966

MARATHON PETROLEUM COMPANY LLC
(f/k/a Marathon Ashland Petroleum LLC), et. al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

On April 9, 2008, the Court issued an Order (Doc. 519) setting forth a trial plan to resolve the present controversy. Since that time the parties have raised issues related to the trial plan. One of these issues is whether or not dispensing equipment should be included in the class-wide trial of general causation. For the reasons articulated below, the Court has decided that it should not.

During the May 27, 2008 Management Conference, the Court ordered Plaintiffs to explain why dispensing equipment should be included in Phase I trial of general causation. In response, Plaintiffs have argued that parties long understood the term "Underground Storage Tanks" to mean not just the storage tanks themselves, but also related equipment. As evidence they point to a stipulation, entered into by the parties on August 14, 2008, which governs the excavation, and inspection of Underground Storage Tanks (Doc. 419). Paragraph 2 of this stipulation provides,

> Underground Storage Tank System Equipment ("USTs") shall mean all of the improvements and equipment associated with the underground storage and gasoline delivery facility, including without limitation, underground storage nks, underground piping (delivery and vent piping), dispenser and tank sumps, including tank sump covers, automatic tank

> gauging (ATG) equipment, tank probes, piping and sump sensors, electrical wiring for all parts of the underground system, submerged tank pumps, sensor wiring, drop tubes, spill buckets, spill caps, grade covers, leak detectors, dispenser islands, canopies, stainless steel flex connectors, backfill and paving, and dispenser equipment.

Plaintiffs contend that this definition exemplifies the parties' understanding of the term "Underground Storage Tanks" or, as abbreviated, "USTs."

In further support of their position, Plaintiffs offer examples of expert reports and motions to the Court that specifically reference not just storage tanks themselves, but dispensing equipment or "related equipment." These examples include the Plaintiffs' Motion for Class Certification, expert reports in support of class certification, Plaintiffs' motions and memoranda in support of their trial plan, and recent expert reports filed on June 3, 2008. Plaintiffs argue that, cumulatively, these examples show that the they have held a consistent belief that damages to dispensing equipment would be adjudicated on a class-wide basis.

For their part Defendants deny that the definition within the August 14, 2007 stipulation was meant to solidify the parties' understanding of the term Underground Storage Tanks. Instead, they argue that the definition was for the limited purposes of the stipulation. Defendants readily admit that prior to class certification (granted by the Court on August 9, 2007) the inclusion of dispensing equipment was a contested issue. (This explains references to dispensing equipment in expert reports and submissions to the Court prior to class certification.) Defendants argue, however, that the approved class definition explicitly excludes any mention of dispensing equipment or related

equipment.[1] They point out that Plaintiffs did not mention dispensing equipment again until very recently and they characterize Plaintiffs' recent inclusion of dispensing equipment in submissions to the Court and expert reports as a late attempt to resurrect the issue. Defendants argue finally that inclusion of dispensing equipment in Phase I, especially at this late stage, would further complicate the trial and prejudice Defendants.

With a refreshed recollection of the issues considered in the class certification process, the Court must agree with Defendants that dispensing equipment was specifically omitted from the approved class definition. A prerequisite for class certification under Rule 23 of the Federal Rules of Civil Procedure is that "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). A consideration relevant to this prerequisite is the ability of the plaintiffs' counsel to fairly and adequately protect the interests of the class. *See* (Doc. 418) Mem. Op. and Order Approving Class Certification. In their memoranda opposing class certification Defendants argued that Plaintiffs' counsel could not adequately protect all interests of the class because of positions counsel had taken in Florida and Alabama litigation. As the Court previously explained,

---

[1] The approved class includes,

> All current or final owners and all operators of underground storage tanks in West Virginia that received contaminated gasoline that was designed, manufactured, transported, or distributed by the Defendants from February 1, 2000 through July 31, 2003. Excluded from the class are the Defendants and any entities in which the Defendants have a controlling interest.

(Doc. 418) Mem. Op. and Order Approving Class Certification.

> In those cases, Plaintiffs' counsel has asserted that flex pipe, a type of pipe between underground storage tanks and fuel dispensers, had been defectively manufactured and needed to be replaced, regardless of gasoline quality. In contrast, Plaintiffs' counsel asserts in this case that flex pipe connected to Plaintiffs' underground storage tanks was damaged by contact with Marathon's gasoline.

*Id.* at 12. The Court decided that the potential inconsistency would not affect the present case because "regardless of whether the flex pipe was defectively manufactured or not, it has no bearing on whether Marathon's gasoline damaged the plaintiffs' underground storage tank[s]. . . . Accordingly, no conflict exists . . . that would prevent counsel from fairly and adequately protecting the interests of the plaintiffs or the class as a whole." *Id.* at 12-13. Plainly, the Court avoided a potential conflict of interest by limiting class-wide liability to costs incurred as a result of harm to underground storage tanks themselves. The Court did not explicitly include dispensing equipment in the definition of the class and Plaintiffs did not raise the matter with the Court until months after the ruling. No mention of dispensing equipment was made during briefings and argument on the motion to clarify the class definition. No mention of dispensing equipment was made when the Plaintiffs were developing their class notice program. Including dispensing equipment in Phase I of the trial would resurrect an issue that has already been resolved by the Court.

Additionally, the Court agrees that including dispensing equipment in the class-wide trial of general causation would threaten to further complicate a phase of trial that will already encompass numerous issues and abundant expert testimony. Further, Defendants were well justified in their belief that dispensing equipment would not be included in a class-wide adjudication of issues; it is probable that they would be prejudiced if the issue were included at this late stage.

For these reasons, dispensing equipment will not be included in the class-wide trial of general causation. Persons claiming damage to this equipment must pursue those claims individually. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

        ENTER:    August 1, 2008

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE